Henry W. Lengyel, J.
This is a claim for personal injury suffered ¡by the claimant April Rose Grob Krygier when she was struck on the right ear by a surfboard being operated by a lifeguard at Jones Beach, a State-owned facility, on July 30, 1961, at about 4:4p p.m.
The claim was initially brought by Stephen J. Grob, individually and as guardian ad litem of April Rose Grob, an infant over 14 years of age. As the infant claimant, born on September 5, 1941, had attained the age of 21 years at the time of trial, the parties, by stipulation, amended the claim and the title of the claim to reflect the married name of said claimant. The claim was timely filed in the Court of Claims and the Attorney-General’s office on October 11, 1961.
On the day in question the claimant, April Krygier, accompanied by her then fiance, Robert D. Krygier, had gone to Jones Beach for a day of recreation. They had gone swimming several times during the day and at about 4:30 p.m., went into the water for a last swim that day. It was a clear, sunny day and the surf was running moderately high for Jones Beach. They swam from the beach in the direction of a sandbar which was approximately 70 or 75 yards out from the beach. At about midway between the beach and the sandbar, a wave broke over said claimant and as she emerged from the wave she was struck on her right ear by a surfboard being operated by lifeguard James P. Cawley. Mr. Cawley testified that he was the boatswain of lifeguards at West End Beach, one of the beaches at Jones Beach. That on the day in question he had been on lifeguard patrol near the sandbar for about an hour prior to the accident. That he was going in toward the beach to change over with his relief. That he was on his knees paddling the surfboard when a wave caught the board and he went into a crouched position on the bqard with one foot at the rear of the board, the other foot foiward and his hands at or near the water. That he was riding the wave in toward the beach when he saw the heads of the claimant and her fiance about 15 or 18 feet in front of him. He swerved the board to his left about 2 or 3 feet and would 'have gone by these two swimmers without contact but the wave broke from the left, instead of in the direction that it was originally running, causing the surfboard to swing out of control and strike said claimant. Mr. Barr, who had been captain in charge of all the lifeguards at Jones Beach, testified that the surfboard being used by Mr. Cawley was a *793 balsa board about 10 feet long, 20 to 22 inches wide at its widest point and tapered to 10 inches wide at its end, 3% inches thick at its thickest point and weighed about 35 pounds. He stated that surfboards had been in use at Jones Beach for many years and that they provided the most efficient means of patrolling congested swimming areas and of conducting rescue operations. He further rated Mr. Cawley as a highly skilled surfboard operator and lifeguard. Mr. Cawley had about 5 or 6 years experience as a lifeguard at Jones Beach and as boatswain was second in charge of lifeguards at this particular beach. Mr. Barr further stated that a person standing in crouch position would reasonably be able to control a surfboard but admitted there was more control when sitting or kneeling on the board. Both Mr. Cawley and Mr. Barr stated that a sudden change in a wave, which is not an unexpectable thing to happen, could cause an unexpected change in the direction of a surfboard.
The claimants brought their claim under two theories, i.e., dangerous instrumentality and negligence on the part of the lifeguard in the operation of the surfboard. The court finds that the surfboard is an extremely efficient method to conduct lifeguard patrols and that it is not a dangerous instrumentality when operated by an experienced lifeguard any more than is a State police car when operated by an experienced State trooper. However, a police officer is required to use due care in the operation of his vehicle. (Fink v. City of New York, 206 Misc. 79.) As was stated in Caldwell v. Village of Island Park (304 N. Y. 268, 274): ‘ ‘ the municipality which extends to its citizens an invitation to enter and use recreational areas owes to those accepting that invitation a duty of reasonable and ordinary care against foreseeable dangers. What degree of care is reasonable necessarily depends upon the attendant circumstances and is a jury question. ‘ Essentially, what is negligence in a given case is a question of fact. Each case depends upon its own peculiar circumstances. Decisions in other actions in which damages are sought for personal injuries furnish no criterion or guide for determination of what is or is not negligence in a particular case involving its own peculiar facts and circumstances. Under circumstances existing in one case the ordinary care required might not be the same as that required under other circumstances. Negligence arises from breach of duty and is relative to time, place and circumstance (Mink v. Keim, 291 N. Y. 300, 304). Ordinary care must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated from the neglect (Railroad Co. v. Jones, 95 U. S. 439; Bailey v. Central Vermont Ry., supra [319 U. S. 350]). *794 It must be commensurate with known dangers.’ (Sadowski v. Long Island R. R. Co., 292 N. Y. 448, 455, 456.) ”
In the case at hand we find that Mr. Cawley was an experienced and well-qualified lifeguard. He was fully acquainted with the surf at Jones Beach and knew that waves often changed directions and that, although he normally had his surfboard under reasonable control, it could go out of control in a moment with a change in the run of a wave. We find that when he saw two heads in the surf about 15 or 18 feet ahead of him he merely attempted to change direction so as to miss these heads by two or three feet and continued to ride the wave. He stated that he could have jumped from the board and grabbed the end of it to make a sea anchor of his body. If he had done so the board might still, have struck this claimant but certainly not with the impetus caused by a 35-pound board carrying a man of about 175 pounds and riding a wave. Lifeguards are placed at our beaches to protect life and limb and not to cause injury to swimmers. We find that Mr. Cawley did not use the care required under the “ time, place and circumstance” Caldwell v. Village of Island Park (supra), and that it was his negligence which caused the damage sustained by said claimant who was free from contributory negligence.
The claimant, April Krygier, sustained a severe laceration of the right ear which severed the upper part of the ear and required 7 suture's. She sustained bruising of her right scalp and of the cervical muscles of the neck and severe pain for a short time after the accident. She has a permanent small scar on the right ear which is the only permanent effect of the injury. Claimant, Stephen G-rob, expended $35 for X rays and medical treatment.
Claimant, Stephen G-rob, is entitled to an award in the sum of $35. Claimant, April Bose G-rob Krygier, is entitled to an award in the sum of $1,500.